

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/21/2009

| | | |
|---|---|---|
| IN RE: § | | |
| IFS FINANCIAL CORPORATION, § | Case No. 02-39553 | |
|     Debtor(s). § | | |
| § | Chapter 7 | |
| § | | |
| W. STEVE SMITH, TRUSTEE, § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | Adversary No. 04-03780 | |
| § | | |
| EDUARDO GARCIA LECUONA, *et al*, § | | |
|     Defendant(s). § | Judge Isgur | |

### AMENDED MEMORANDUM OPINION

This Amended Memorandum Opinion corrects the clerical error in and supersedes the Court's previously issued August 26, 2009 Memorandum Opinion (docket no. 237).

### Summary

Trustee Smith seeks recovery of an allegedly fraudulent stock transfer from the debtor to Defendants. Defendants seek dismissal of this adversary proceeding based on lack of personal jurisdiction. Defendants are Mexican citizens and businesses. Defendants allege that the stock transfer was executed solely in Mexico and between Mexican individuals and entities. Accordingly, Defendants contend that they lacked the required "minimum contacts" within Texas to create personal jurisdiction. For the reasons set forth below, the Court denies Defendants' motions. Defendants executed the allegedly fraudulent transfer through multiple contacts within the United States that were sufficient to give rise to specific personal jurisdiction. Defendants transacted with United States entities and individuals and used United States bank accounts to carry out a transaction that allegedly defrauded a United States entity.

**Background**

*1. The Interamericas Companies*

The IFS Financial Corporation ("IFS") case is a jointly administered case comprised of approximately 19 related entities ("Interamericas Companies").[1] The Interamericas Companies include Interamericas, Ltd., Interamericas Investments, Ltd., Interamericas Holdings, Inc., Interamericas Corporation, Interamericas Financial Holdings, Ltd., Interamericas Financial Holdings Corp., IFS, and other related entities.

The Interamericas Companies received money, primarily from Mexican investors, in exchange for future payments to be made from the operation of Interamericas Companies' various businesses.[2] Between 1998 and 2002, Interamericas Companies' assets were transferred between various IFS entities and ultimately transferred outside the companies. Under the jointly administered case, W. Steve Smith, Trustee, has filed over 100 adversary proceedings to recover allegedly avoidable transfers. Many of the adversary proceedings were filed against individual investors who received withdrawals from their Interamericas Companies accounts after the IFS estate became insolvent. The allegedly fraudulent transfers received by defendant investors often amounted to a small portion of the total amounts invested (and ultimately lost) with the Interamericas Companies.

*2. The Fraudulent Transfer Adversary*

In October of 2004, Trustee Smith filed this adversary proceeding, asserting fraudulent transfer causes of action against defendants Eduardo Garcia Lecuona ("Lecuona"), Luis Esteve de Murga ("de Murga"), Money Services Group, Inc. ("MSG"), Deal Consultores, S.A. DE C.V.,

---

[1] An involuntary petition was filed by Plaintiff GMAC against each of these entities on approximately August 23, 2002. The Court entered an order on January 3, 2005, jointly administering these cases under a single docket.

[2] The Interamericas Companies' businesses included the mortgage, banking, insurance, real estate, custom brokerage and transport forwarding, money exchange, construction/development, and food industries.

("Deal"), and Intercam Casa de Cambio ("Intercam"). Trustee Smith seeks recovery of Intercam stock allegedly fraudulently transferred from the Interamericas Companies. Trustee Smith alleges that defendants acquired a 49% stock interest in Intercam without transferring any material consideration to the Interamericas Companies. Trustee Smith also seeks recovery of a series of payments allegedly made from Interamericas Companies to Lecuona and de Murga in 2001. Trustee Smith alleges that Lecuona received four fraudulent transfers totaling $225,000.00 and de Murga received a $50,000.00 fraudulent transfer. In addition to the fraudulent transfer claim, Trustee Smith asserts fraud and conspiracy claims based on the alleged stock transfer. Trustee Smith seeks legal costs and punitive damages, in addition to recovery of the transferred assets.

Defendants Intercam, Lecuona, and de Murga filed various motions to dismiss based on lack of personal jurisdiction.[3] Defendants contend that they are Mexican nationals and entities and Trustee Smith's fraudulent transfer claim is based on conduct that occurred between Mexican nationals in Mexico. Trustee Smith alleges that Defendants engaged in intentional conduct within the United States sufficient to establish both general and specific personal jurisdiction over Defendants. Trustee Smith alleges that Defendants owned companies that did substantial business in the United States and were employed by Interamericas Companies entities incorporated in the United States. Trustee Smith also alleges that the fraudulent transfer claim arises out of conduct occurring in the United States. On May 14, 2009, the Court held an evidentiary hearing on the personal jurisdiction issue.

For the reasons set forth below, the Court denies Defendants' motions to dismiss.

---

[3] Defendants Deal and MSG did not join in filed motions to dismiss or file their own. Accordingly, the Court limits its personal jurisdiction analysis to Lecuona, Murga, and Intercam.

## Jurisdiction

This Court has jurisdiction of this matter under 28 U.S.C. § 1334. This is a core matter under 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. §1409.

## Personal Jurisdiction

Trustee Smith, as the party invoking the jurisdiction of the Court, bears the burden of establishing that the Court has jurisdiction over Defendants. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006); *Guidry v. U.S. Tobacco Co.,* 188 F.3d 619, 625 (5th Cir. 1999). Initially, at the pre-evidentiary hearing stage in a case, a plaintiff need only make a prima facie or threshold showing of jurisdiction. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000); *Guidry*, 188 F.3d at 625. All factual conflicts are resolved in the plaintiff's favor. *Id.* Ultimately, however, the plaintiff must prove by a preponderance of the evidence at a pretrial evidentiary hearing or at trial that the requisite jurisdictional facts exist. *Brown v. Slenker*, 220 F.3d 411, 419 (5th Cir. 2000); *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270-71 n.12 (5th Cir. 1983). Because the Court held an evidentiary hearing on the personal jurisdiction issues, Trustee Smith must establish personal jurisdiction by a preponderance of the evidence.

Personal jurisdiction analysis first requires the court to consider whether a federal statute or rule defines the extent of the court's personal jurisdiction. *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 887 (Bankr. N.D. Ill. 2006) (citing *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004)). Federal Bankruptcy Rule 7004(f) defines personal jurisdiction over defendants in an adversary proceeding pending before a bankruptcy court. *In re Teknek, LLC*, 354 B.R. 181, 191. Rule 7004(f) authorizes personal jurisdiction to the extent allowed by the Fifth Amendment Due Process clause. *In re Teknek*, 354 B.R. at 192 (citing *Enron Corp. v. Arora (In re Enron Corp.)*,

4

316 B.R. 434, 440, 442, 444–46 n. 8 (Bankr. S.D. N.Y. 2004); *In re Federalpha Steel*, 341 B.R. at 884; *North v. Winterthur Assurances (In re North)*, 279 B.R. 845, 851–53 (Bankr. D. Ariz. 2002)). Consequently, a bankruptcy court's personal jurisdiction is not affected by a state's long-arm statute or constitution. *In re Teknek*, 354 B.R. at 193.

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant when: (1) the defendant has "minimum contacts" with the forum; and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 813 (5th Cir. 2006). "Minimum contacts" are required to preserve a defendant's Due Process right not to be haled into a forum without "fair warning" that prior conduct subjected them to that forum's jurisdiction. *Burger King Corp.*, 471 U.S. at 471–72. The plaintiff bears the burden of establishing "minimum contacts." *Seiferth*, 472 F.3d at 271. If successful, the burden shifts to the defendant to establish that the exercise of jurisdiction would be unfair or unreasonable. *Id.*

With one exception, the "minimum-contacts" analysis used in diversity cases is also applied to a foreign defendant in bankruptcy court adversary proceedings based on federal law. Generally, "minimum contacts" analysis looks only at the defendant's contacts within the forum state. When the defendant is a foreign citizen haled before a bankruptcy court within an adversary proceeding based on federal law, courts aggregate the defendant's contacts within the *entire* United States. *In re Teknek*, 354 B.R. at 192. *See also Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996) ("When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had

5

sufficient minimum contacts with the United States."); *U.S. v. De Ortiz*, 910 F.2d 376, 382 (7th Cir. 1990). "To satisfy due process, then, a defendant . . . need have only minimum 'national contacts.'" *In re Federalpha Steel*, 341 B.R. at 888 (quoting *United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir. 1991)).

Courts have not crafted a neat, mechanical formula for defining the required "minimum contacts." Indeed, the Supreme Court has specifically repudiated a mechanical approach. *Burger King Corp.*, 471 U.S. at 485–86 (rejecting "talismanic jurisdictional formulas" for personal jurisdiction analysis). However, generally, personal jurisdiction exists if a defendant intentionally engages in conduct within or affecting the forum state and the conduct was significant enough that the defendant should not be surprised to have the consequences of his conduct adjudicated within the forum state's courts. The Supreme Court has stated that the contacts must be "purposeful" as opposed to "fortuitous" or "attenuated," and the contacts must be significant enough that a reasonable person would foresee that their "conduct and connection with the forum State are such that he should reasonably anticipate being haled into the court there." *Burger King Corp.*, 471 U.S. at 474 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 299 (1980)). *See also* MOORE'S FEDERAL PRACTICE, § 108.42[3][b][i] (3d ed. 2007) ("intentionally causing an effect in the forum state constitutes purposeful availment") (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

A defendant's "minimum contacts" may give rise to either general or specific personal jurisdiction. A court with general personal jurisdiction has jurisdiction to adjudicate any claim against that defendant, including claims that do not arise in the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). A court may exercise general personal jurisdiction over any action brought against a defendant if the defendant's contacts with the

forum state are "continuous and systematic." *Seiferth*, 472 F.3d at 271. When examining a general personal jurisdiction issue, courts consider the defendant's contacts occurring within the forum "over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc., v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996)).

Absent general personal jurisdiction, the Court may still exercise limited specific personal jurisdiction over a defendant when a defendant's contacts with the forum location arise from, or are directly related to, the cause of action. *Burger King Corp.*, 471 U.S. at 472–73. Unlike general personal jurisdiction, specific personal jurisdiction does not extend to any claim against the non-forum defendant. Specific personal jurisdiction is limited to causes of action that arise from conduct that occurred in, or was directed to, the forum location. *Burger King Corp.*, 471 U.S. at 473 n. 15.

### Personal Jurisdiction Over Lecuona and de Murga

The testimony and evidence during the May 14 hearing focused on Defendants' acquisition of the 49% Intercam stock interest. The Court makes no findings as to whether the manner in which Defendants acquired the stock gives rise to liability. Lecuona and de Murga acquired the stock through numerous purposeful acts that were directed to or had an effect in the United States. The manner in which Lecuona and de Murga acquired the stock, though not necessarily improper, nevertheless gives rise to specific personal jurisdiction over Lecuona and de Murga. The Court explains the mechanics of the stock transfer below.

### 1. *Specific Personal Jurisdiction*

#### A. The Intercam Shareholder Agreement

In 1996, Lecuona and de Murga incorporated Intercam, a Mexican corporation. Intercam

provides money-exchange and wiring services to Mexican nationals in Mexico and the United States. The incorporation documents named Lecuona as the chairman and de Murga as the chief executive officer of Intercam, and granted both a general power of attorney. Both Lecuona and de Murga also held a significant ownership interest. At its inception, Lecuona and de Murga owned 49% of Intercam, Interamericas Companies (a Delaware corporation) owned 49%, and an Interamericas entities insider owned the remaining 2%.

In 1999, Interamericas Corporation sold stock options for its 49% Intercam stock interest in Intercam to third-parties. Options for 8,000 shares were sold to Welleys International, Inc., a British Virgin Islands corporation, for $250,000.00. Options for 1,300 shares were sold to Jorge Chico Poinssont, an individual believed to be a Mexican resident. Options for Interamericas Companies' remaining 14,143 shares were sold to Interamericas Financial Holdings, Inc., a Delaware company.

Lecuona testified that Interamericas Companies' sale of the options violated a shareholder agreement providing that shares could not be transferred without giving other shareholders a right of first refusal. After learning of Interamericas Companies' sale of the options, Lecuona executed a series of transactions to reacquire the options.

### B. MSG's Reacquisition of the 49% Intercam Stock Interest

In 1998, Lecuona and de Murga created MSG, a Delaware corporation.[4] Lecuona testified that the sole purpose of MSG was to serve as a vehicle for repurchasing the stock transferred by Interamericas Companies. In 1999, MSG executed stock transfer agreements with Welleys and Poinssont to reacquire the transferred shares. As consideration for the stock, MSG made periodic payments to Welleys and Poinssont from MSG's Houston-based Bank of America

---

[4] MSG was originally incorporated in March of 1998 under the name Intercam U.S.A. Corporation, a Delaware corporation.

8

account. MSG funds used to make the payments came largely from Mexican investors. Payments were also made from contributions by de Murga, individually, and an account of FinMex, Inc., a United States business. The investments paid to MSG were placed in MSG's Houston bank account and amounts paid to investors were paid from the Houston account.

In 2000 and 2001, MSG acquired the 14,143 shares transferred to IFS Financial Corporation. On November 29, 2000, Lecuona acquired a $1,378,732.34 promissory note from Blitz Holdings Corp., a Panama corporation, owed by IFS Financial Corporation. Lecuona acquired the note, in part, by buying obligations owed by Blitz to various Mexican investors. The note included a choice of law and forum selection clause providing for application of Texas law and a Texas forum. On October 31, 2001, Lecuona and IFS Financial Corporation, a Delaware corporation, executed a purchase and sale agreement by which Lecuona transferred the Blitz note in return for IFS's option to purchase 14,143 shares of Intercam. The agreement included a Texas choice of law and forum selection clause. On the same date, Lecuona transferred the options to MSG.

### C. Summary of Specific Personal Jurisdiction Facts

Contrary to Defendants' contentions, the acquisition of a 49% Intercam stock interest was not a simple transaction occurring solely between Mexican residents in Mexico. Lecuona created a U.S. corporation with U.S. bank accounts,[5] entered into purchase and sale agreements

---

[5] Courts may consider ownership of a bank account within the disputed forum as a minimum contact for purposes of personal jurisdiction. *See Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 614 (5th Cir. 2008); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009); *D'Jamoos v. Pilatus Aircraft Ltd.*, 556 F.3d 94, 107 (3d Cir. 2009). Ownership of a bank account in the disputed forum may not, alone, be sufficient to satisfy general personal jurisdiction. *City of El Paso v. Soule*, 991 F. Supp. 812, 821 n. 16 (W.D. Tex. 1998). However, ownership and use of a bank account in the disputed forum to carry out the alleged tort may, alone, be sufficient to establish specific personal jurisdiction. *Id*. At the very least, it cannot be disputed that ownership and use of a bank account can be considered, amongst other contacts with the disputed forum, to determine if the defendant's contacts were sufficient to give rise to specific personal jurisdiction over the cause of action based on those contacts. The ultimate question in personal jurisdiction analysis, whether general or specific, is whether the defendant's interactions with

with U.S. corporations, and paid companies and investors through a U.S. account. Many of the agreements included Texas choice of law and forum selection clauses. Accordingly, the Court finds that it has specific personal jurisdiction over Lecuona with respect to Trustee Smith's fraudulent transfer claim seeking recovery of the 49% stock interest.

The Court finds that de Murga's involvement in the stock transactions also created sufficient contacts with the United States to give rise to specific personal jurisdiction. De Murga signed documents that played a significant role in the stock acquisition, including the MSG incorporation document and an assignment contract between Lecuona and MSG by which Lecuona transferred options acquired from IFS Financial Corporation to MSG. De Murga participated in funding the acquisition. De Murga testified that a portion of the funds used to acquire the stock came from his personal funds, and from a payment he authorized from Finmex.

The Court also finds that Lecuona's contacts give rise to specific personal jurisdiction over de Murga. Lecuona and de Murga jointly participated in the stock acquisition for their mutual benefit. Their joint interests and ownership in Intercam and MSG and their joint efforts were sufficient to give rise to an agency relationship. "There is no particular mode or method which must be adhered to in order to create or establish agency. Regardless of the terms used by the parties, or by what name the transaction is designated, if the facts fairly disclose that one party is acting for or representing another, by the latter's authority the agency exists." WILLISTON ON CONTRACTS, §35:1 (4th ed. 1999) (citing RESTATEMENT (SECOND) OF AGENCY § 15, (2nd ed. 1958)); *Smith v. Matias (In re IFS Financial Corp.)*, 2008 WL 2778845, at *13 (Bankr. S.D. Tex. Sept. 11, 2007).

---

the forum were such that he should not be unduly surprised if he has to defend his conduct in that forum. *Burger King Corp.*, 471 U.S. at 474.

The Supreme Court has held that "when commercial activities are 'carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where he is a 'primary participant' in the enterprise and has acted purposefully in directing those activities." *Burger King Corp.*, 471 U.S. at 480, n.22 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole*, 290 F.3d 42, 55 (1st Cir. 2002) ("For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal."); *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1335 (2d Cir. 2001) ("activities conducted by in-state party are not attributable to an out-of-state defendant unless the in-state party is regarded as an agent of the defendant"); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3d Cir. 1993); *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990); *Williamson v. Petrosakh Joint Stock Co.*, 952 F. Supp. 495, 498 (S.D. Tex. 1997) ("Actions by an agent can be used to establish jurisdiction over the principal."); *Coleman v. Klockner & Co. AG,* 180 S.W.3d 577, 588 (Tex. App.—Houston[14th Dist.] 2005, no pet.) ("An agent's contacts can be imputed to the principal for purposes of the jurisdictional inquiry."); *Glenwood Farms Inc. v. Ivey*, 353 F. Supp. 2d 133, 141 (D. Me. 2004) (contacts "in furtherance of the joint venture may be imputed to the other members of the joint venture for purposes of determining related contacts with the forum") (citing *Daynard*, 290 F.3d at 55–60); *Adm'rs of Tulane Educ. Fund v. Debio Holding S.A.*, 2000 WL 877015, at *3 ("It has routinely been held that whenever one co-venturer acts in the forum to further the interests of the venture, its contacts with the forum will be attributed to the co-venturers.")

### 2. General Personal Jurisdiction

The Court finds that Trustee Smith failed to meet his burden with respect to general

personal jurisdiction over Lecuona and de Murga. Lecuona and de Murga both testified that they had visited the United States over a dozen times. However, both testified that most visits were for personal matters rather than business matters relating to Interamericas entities or Intercam. Lecuona testified that, at one time, he owned a home in the Woodlands, Texas. However, he also testified that his wife and children used the home, while he infrequently visited. Both were officers or directors of a number of entities, however, Lecuona and de Murga testified that most of these entities were incorporated in Mexico, were managed in Mexico, and carried out most of their business in Mexico.

Lecuona and de Murga were also employed by Interamericas Companies' entities as promoters, served as officers or directors of Intermamericas Companies' entities, and were granted a power of attorney for some Interamericas Companies entities. However, there is no evidence that Lecuona or de Murga were paid substantial sums, were involved in the Interamericas Companies' decision-making, or participated in any tortious conduct. Absent a veil-piercing theory or allegations of an individual's own tortious conduct, an entity's general business contacts cannot be imputed to an officer or director for the purposes of establishing personal jurisdiction. Trustee Smith has not asserted any veil-piercing theories or plead any facts suggesting that Lecuona or de Murga participated in any tortious conduct in their capacity as directors or offices of Interamericas Companies. At this stage, all that has been proven is that Lecuona and de Murga were passive investors and part-time employees or business partners that carried out most, if not all, of their functions related to Interamericas Companies in Mexico. Based on the evidence presented, the Court finds that Lecuona and de Murga's contacts with the United States were too sporadic to give rise to general personal jurisdiction.

*3. Cash Transfers*

"A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006). Trustee Smith also seeks recovery of various payments made from Interamericas Companies' entities to Lecouna and de Murga.

Trustee Smith produced little evidence with respect to the cash transfers he seeks to recover. No documentation was produced showing the origins or purposes of the alleged transfers. Accordingly, at this juncture, the Court cannot find that the Court has specific personal jurisdiction over these claims. However, the Court declines to dismiss these claims for lack of specific personal jurisdiction. A single tortious act within a forum is sufficient to create specific personal jurisdiction for claims based on that act. *Lewis v. Fresne*, 252 F.3d 352, 358–359 (5th Cir. 2001) ("A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."). The Court has yet to hold a final hearing on the merits. If Trustee Smith's allegations with respect to the cash transfers are proven at the merits hearing, Trustee Smith would establish a tortious act that occurred within this forum.

Ultimately, Trustee Smith must prove by a preponderance of the evidence that the requisite jurisdictional facts exist. *Brown v. Slenker*, 220 F.3d 411, 419 (5th Cir. 2000). Because Trustee Smith may be able to prove the jurisdictional facts by proving the elements of the underlying claims at the pending trial, and the Court has already found that it may exercise specific personal jurisdiction over defendants with respect to Trustee Smith's most significant claim, the Court declines, at this time, to dismiss the claims based on the cash transfers.

**Personal Jurisdiction Over Intercam**

Trustee Smith failed to meet his burden with respect to general personal jurisdiction over

Intercam. Trustee Smith makes numerous allegations and points to statements made in depositions suggesting that Intercam conducted business with United States entities and individuals, owned a United States bank account, and was partially owned and affiliated with United States entities. The only admitted evidence produced by Smith with respect to Intercam's general contacts is a 2006 shareholders agreement between Intercam and Interamericas Corporation, a Delaware Corporation. The agreement provides that the parties promise to use their best efforts to utilize Intercam's services. However, there is no evidence indicating what either party did under this agreement. Moreover, by 2006, most, if not all, Interamericas Companies entities were no longer operating.

However, the Court does find that Trustee Smith produced evidence demonstrating Intercam's involvement in the 49% Intercam stock transfer sufficient to exercise specific personal jurisdiction. Trustee Smith produced documents and testimony indicating that Intercam funds were used to fund the acquisition of the stock transferred to IFS Financial Corporation. Specifically, Trustee Smith produced internal Intercam documents recording transfers from Intercam to the individuals from whom Lecuona purchased Blitz obligations. These obligations were the obligations traded to Blitz for the IFS note Lecuona then traded to IFS for the stock reacquisition. This involvement in a complex transaction that involved numerous United States individuals and entities and allegedly constituted a fraudulent transfer with respect to a United States entity is sufficient for this Court to exercise specific personal jurisdiction.

### Traditional Notions of Fair Play and Substantial Justice

If the plaintiff successfully establishes "minimum contacts," the burden shifts to the defendant to establish that the exercise of jurisdiction would be inconsistent with traditional notions of fair play and substantial justice. *Burger King Corp.*, 471 U.S. at 477; *Seiferth*, 472

14

F.3d at 271. The burden is not light. The defendant "must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477 (emphasis added).

> Fairness and substantial justice are evaluated by considering five factors:
>
> (1) the burden on the defendant;
> (2) the forum State's interest in adjudicating the dispute;
> (3) the plaintiff's interest in obtaining convenient and effective relief;
> (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and
> (5) shared interest of the several States in furthering fundamental substantive policies.

*Burger King Corp.*, 471 U.S. at 478 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292); *Wilson*, 20 F.3d at 647.

Defendants produced no evidence that their physical or financial condition would make travel to Houston overly burdensome, or otherwise suggest that this court's exercise of specific personal jurisdiction over Lecuona and de Murga would be contrary to norms of fair play and substantial justice. Though Lecuona and de Murga are Mexican residents, the Court intends to accommodate the language barrier issues. This factor does not present a compelling justification. The evidence suggests that most of the documentary evidence is located in Texas. The stock at the center of this dispute came from Interamericas Companies, a conglomeration of entities run from Texas.

Moreover, the forum's interest in adjudicating the present dispute strongly favors this Court's jurisdiction. Trustee Smith's adversary proceeding was brought pursuant to federal bankruptcy laws and within a federal bankruptcy case. The United States has a substantial interest in enforcing its laws. *In re Teknek*, 354 B.R. at 204 ("The adjustment of the debtor-creditor relationship is a federal concern, 28 U.S.C. § 157(b)(2)(O), and one of the policies

15

underlying the substantive law in this area is the notion that a single federal forum ought to have the power to bring before it all matters with respect to a single bankruptcy debtor so that all such matters may be handled more efficiently, consistently, and expeditiously than if they were scattered throughout various courts.").

## Service of Process

De Murga and Intercam also seek dismissal under Rule 12(b) for alleged insufficient service of process. De Murga and Intercam contend that they were served through an individual who was not their agent. De Murga and Intercam also contend that service did not comply with the Hague convention because a service certificate was not completed by the relevant judicial authority. De Murga and Intercam contend that Rule 4(f) requires service of foreign defendants to comply with the Hague Convention.

"Unless some defect in service is shown on the face of the return, a motion to dismiss under Rule 12(b)(5) requires the defendant to produce admissible evidence establishing the lack of proper service." *Nabulsi v. Nahyan*, 2009 WL 1658017, at *4 (S.D. Tex. June 12, 2009). Trustee Smith filed returns of service indicating that service and summons was executed on Intercam both in 2005 and 2008. Trustee Smith filed a return of service indication that that service and summons was executed on de Murga at Intercam's business address in 2005.

The Court previously held a hearing and issued a written Order on whether filing an amended complaint required Trustee Smith to serve de Murga and Intercam with new summons. The Court's April 3, 2009 Order held that service of summons was proper. De Murga and Intercam's attorney was present at the prior hearing and Trustee Smith personally served their attorney at the hearing with an amended complaint. De Murga and Intercam, through his counsel, has participated in this adversary on multiple occasions. De Murga and Intercam

appeared at the May 15 hearing. During the May 14, 2009 hearing, de Murga and Intercam produced no evidence demonstrating improper service or suggesting that improper service impaired their ability to defend against Trustee Smith's claims. Accordingly, the Court denies de Murga and Intercam's request for dismissal based on improper service.

## Leave to Amend

On September 3, 2008, Trustee Smith filed a motion for leave to file a second amendment complaint and add Intercam Casa de Bolsa, S.A. de C.V. ("Bolsa"). In 2008, Intercam merged with Bolsa. Trustee Smith's pleadings made general allegations that Defendants engineered the merger to thwart Trustee Smith's fraudulent transfer adversary.

During the May 14, 2009 hearing, Trustee Smith produced no evidence that Bolsa did anything nefarious. Bolsa may be a successor to Intercam. If Trustee Smith believes Bolsa may have successor liability, then the appropriate motion is a motion to substitute Bolsa for Intercam rather than a motion to amend. Joining Bolsa in what is already a complicated lawsuit would not assist the efficient and just resolution of this lawsuit. Accordingly, the Court denies Trustee Smith's motion for leave to amend and add Bolsa, without prejudice to filing a motion to substitute Bolsa.

**Conclusion**

For the reasons set forth above, the Court orders the following:

▪ Trustee Smith's motion for leave to amend is denied, without prejudice to seek substitution of Bolsa.

▪ Trustee Smith's fraudulent transfer claims for all transfers, other than the 49% Intercam stock transfer and the cash transfers, are dismissed.

The balance of Defendants' motion to dismiss is denied.

Signed at Houston, Texas, on September 21, 2009.

MARVIN ISGUR
United States Bankruptcy Judge